IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESTLEY GOODWIN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PHILADELPHIA, *et al.*,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 25-5858 |

**OPINION**

**Slomsky, J.** **September 30, 2026**

## I. INTRODUCTION

Before the Court are three motions to dismiss Plaintiff Westley Goodwin's ("Plaintiff") Complaint. In the Complaint, Plaintiff alleges that sixteen state actors conspired to violate his federal civil rights and to intentionally inflict emotional distress on him. In their Motions, those sixteen actors argue that (1) Plaintiff fails to allege sufficient facts to state his claims, (2) the statute of limitations renders certain claims untimely, and (3) his claims are barred by qualified immunity.[1] For the reasons stated below, the Court will dismiss Counts I – IX, with the exception of the Section 1983 claim in Count I as to Defendant Devon Knox and the Section

[1] The Court need not address the arguments concerning qualified immunity, as most claims will be dismissed on the other two grounds. The remaining Defendants Devon Knox and Christopher Evans do not argue that their conduct falls within the coverage of qualified immunity.

1983 claims in Counts III and V as to Defendant Christopher Evanson. In addition, Plaintiff will be granted leave to amend his Complaint.

## II. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff traces this action's origins to an unfortunate act of vandalism committed by an unidentified Southeastern Pennsylvania Transportation Authority ("SEPTA") bus passenger. On August 13, 2023, following an extended ride through Route G, during which the bus proceeded past each requested stop without stopping, the driver eventually halted the vehicle, ejected a certain passenger, and directed his remaining occupants to disembark. (See Doc. No. 1 at 6-7) "Get the fuck off the bus!" he allegedly said. (See Doc. No. 1 at 7) That certain passenger, by then none too pleased to have endured a journey of considerable duration only to have it end so ignominiously, exited the bus with dramatics. (See Doc. No. 1 at 7) He violently assailed the vehicle's windows and doors, further exasperating both the driver, who wanted the occupants to leave, and the occupants, who seized the opportunity to do so. (See Doc. No. 1 at 7)

At some point in the melee, the bus driver approached Plaintiff, who suddenly found himself the recipient of profanities, photos, threats to "watch [his] back," accusations of brandishing a weapon, and responsibility for property destruction. (See Doc. No. 1 at 7) At the bus driver's beckoning, police came to the scene and arrested Plaintiff, who soon also found himself the target of a misguided police investigation and an allegedly malicious prosecution. (See Doc. No. 1 at 7) That Plaintiff was in possession of a firearm throughout the incident, albeit with a state license to carry the same, did little to persuade the police that their suspicions of his criminal responsibility were misplaced. (See Doc. No. 1 at 8) Accordingly, police confiscated from Plaintiff the weapon, his license, and other personal items. (See Doc. No. 1 at 8)

On August 14, 2023, Plaintiff was charged with simple assault, terroristic threats, harassment, and disorderly conduct, all misdemeanors, and was released on an unsecured bond of $50,000. (See Doc. No. 1 at 9-10) After his arraignment, Plaintiff sought to retrieve the items taken at the time of his arrest, but police did not return his firearm or produce a property receipt for it. (See Doc. No. 1 at 10) Plaintiff, curious about the "whereabouts or status of his firearm," sought information from the SEPTA Transit Police Department and Philadelphia Police Department, but to no avail. (See Doc. No. 1 at 10-11) During Plaintiff's criminal proceedings in Philadelphia Municipal Court, the prosecutor could not provide information about Plaintiff's firearm or the property receipt. (See Doc. No. 1 at 12-14) When the prosecution turned over evidence, however, Plaintiff became aware of a police bodycam, which showed that an officer had placed Plaintiff's firearm in the door panel of a patrol vehicle. (See Doc. No. 1 at 11) Then, after the prosecution made several requests to continue trial, Plaintiff's charges were ultimately dropped. (See id. at 12-14) Apparently, Plaintiff's firearm was never returned.

On October 12, 2025, Plaintiff filed the present Complaint, alleging that the incident on the bus and his subsequent arrest and criminal proceeding violated his civil rights such that he "suffered loss of reputation in his community, experienced emotional distress, Anxiety, Post Traumatic Stress Disorder ("PTSD"), Insomnia, loss of enjoyment of life, loss of financial resources, legal fees and expense, and loss of past and future income and earning capacity." (See Doc. No. 1 at 14) To that end, Plaintiff brought causes of action against three sets of Defendants: (1) the City of Philadelphia and police officers from the Philadelphia Police Department, including Lawrence Nuble, Christopher Evanson, Donato, and Weiss (together, "City of Philadelphia Defendants")[2]; (2) SEPTA, bus driver Devon Knox, and transit police

---

[2] The first names of Donato and Weiss are not given in the Complaint.

officers Ty Castellano, Patrick Shields, Kevin Warg, and Neil Larson (together, "SEPTA Defendants"); and (3) the charging attorneys from the District Attorney's Office, including Does No. 1-3,[3] James Gregore, Esquire and Cordell Spires, Esquire (together, "District Attorney's Office Defendants"). (See Doc. No. 1 at 14-33) Plaintiff asserts the following claims:

- Count I: Malicious Prosecution under 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 1985 ("Section 1985")[4]
- Count II: "Liberty Deprivations" under Section 1983 and Section 1985
- Count III: "Due Process Violations" Arising from the "Conversion/Disappearance of Firearm" under Section 1983 and Section 1985
- Count IV: "Brady/Giglio" Violations under Section 1983 and Section 1985
- Count V: "Constitutional Claim – Second Amendment" under Section 1983 and Section 1985
- Count VI: "Constitutional Claim – Fourth Amendment" under Section 1983 and Section 1985
- Count VII: Monell Claim under Section 1983
- Count VIII: Monell Claim under Section 1983
- Count IX: Intentional Infliction of Emotional Distress under Pennsylvania State Law

(See Doc. No. 1 at 14-33)

---

[3] Plaintiff names three Doe Defendants but only uses two numbers: "Doe No. 1, Esquire"; "Doe No. 2, Esquire"; and "Doe No. 2, Esquire." The Court will construe the Complaint to assert claims against three Doe Defendants. (See Doc. No. 1 at 1)

[4] Throughout Counts I – VI, Plaintiff appears to actually state two claims in each Count, one under Section 1983 and one under Section 1985. The Court will address both claims asserted in each count together.

All three sets of Defendants moved to dismiss the Complaint. On November 4, 2025, the City of Philadelphia Defendants and the SEPTA Defendants filed two separate Motions to Dismiss the Complaint. (Doc. Nos. 10, 11) On January 20, 2026, after receiving three deadline extensions for their response to the Complaint, the District Attorney's Office Defendants filed their Motion to Dismiss the Complaint. (Doc. No. 28) A few weeks later, on February 3, 2026, Plaintiff filed a consolidated Response in Opposition to the three Motions to Dismiss. (Doc. No. 29) This case was reassigned to District Judge Joel H. Slomsky on April 6, 2026 from the docket of retiring Judge Anita B. Brody. (Doc. No. 30)

## III. LEGAL STANDARD

### a. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) requires courts, when ruling on a motion to dismiss, to "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir.2002)). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Applying this principle in Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009), the Third Circuit articulated a two-part test that district courts within the Circuit utilize to evaluate whether allegations in a complaint survive a 12(b)(6) motion to dismiss. See also Edwards v. A.H. Cornell & Son, Inc., No. 09–3198, 2010 WL 2521033, at *2 (3d Cir. June 24, 2010). First, district courts should separate the factual and legal elements of a claim, meaning

that they "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler, 578 F.3d at 210–11. Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211.

In other words, the complaint must do more than allege his entitlement to relief; it must "show" such an entitlement through the facts. Id. (citing Phillips v. County of Allegheny, 515 F.3d 224, 234–35 (3d Cir.2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679; Jones v. ABN Amro Mortg. Group, Inc., 606 F.3d 119, 123 (3d Cir. 2010). This "plausibility" determination under step two of the analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**b. Elements of Claims Brought Under Section 1983 and Section 1985**

42 U.S.C. § 1983 ("Section 1983") provides a remedy for federal civil rights violations committed by individuals acting under color of state law. The statute provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not create substantive rights. Rather, the statute provides a remedy for violations of rights that have been established elsewhere through the Constitution or federal law. City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985). To state a claim under Section 1983, a plaintiff must specifically allege that a person acting under the color of state law caused a deprivation of a right secured by the Constitution. Parratt v. Taylor, 451 U.S. 527, 535 (1981);

Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995). More fundamentally, a properly plead Section 1983 claim must allege the following elements: (1) conduct by a person, (2) who acted under color of state law, (3) which caused a deprivation of a federally protected right. West v. Atkins, 487 U.S. 42, 48 (1988).

The first prong of this test requires that an individual defendant in a civil rights action have personal involvement in committing the alleged violation. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3rd Cir. 1988); Agresta v. City of Phila., 801 F. Supp. 1464, 1468 (E.D. Pa. 1992); see also Reaves v. Vaugh, 2001 WL 936392 at * 4 (E.D. Pa., Aug. 10, 2001) (emphasizing that vicarious liability does not apply to §1983 claims); Eppers v. Dragovich, 1996 WL 420830 at * 4 (E.D. Pa., July 24, 1996) (explaining that defendant in civil rights claim must have "personal involvement" in alleged wrongs). Moreover, it is well settled that state actors cannot be held vicariously liable under § 1983 for the actions of other state actors. See Parratt, 451 U.S. at 537 n.3, overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986). Accordingly, an individual police officer's liability must "be based on his [or her] own acts or omissions, not those of [other] individual officers." Agresta, 801 F. Supp. at 1468.

42 U.S.C. § 1985(3) allows an action to be brought by one harmed by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3); see also Farber v. City of Patterson, 440 F.3d 131, 134 (3d Cir. 2006). That is, to state a claim under Section 1985(3), Plaintiff must allege: (1) a conspiracy; (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or

deprived of any right or privilege of a citizen of the United States. Farber, 440 F.3d at 134 (quoting United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828–29 (1983)). Crucially, to establish liability, the statute requires that "two or more persons" participate in the alleged conspiracy. See 42 U.S.C. § 1985(3).

To be clear, Section 1985 was not "intended to provide a federal remedy for 'all tortious, conspiratorial interferences with the rights of others,' or to be a 'general federal tort law.'" Farber, 440 F.3d at 135 (quoting Griffin, 403 U.S. at 101-102). Rather, Plaintiff must allege "some racial, *or perhaps otherwise class-based,* invidiously discriminatory animus behind the conspirators' action." Id. (quoting Griffin, 403 U.S. at 102) (emphasis in original). Thus, the conspiracy alleged must have been motivated by discriminatory animus against an identifiable class, and the discrimination must have been invidious.

## IV. ANALYSIS

### a. Count I: Malicious Prosecution under Section 1983 and Section 1985

Count I of Plaintiff's Complaint asserts malicious prosecution under Section 1983 and Section 1985 against Attorney Does 1-3 of the Philadelphia District Attorney's Office; James Gregore, Esquire; Cordell Spires, Esquire; Lawrence Nuble; Christopher Evanson; Donato; Weiss; Ty Castellano, Patrick Shields; Kevin Warg; Neil Larson; and Devon Knox (together, "Individual Defendants"). Through three separate Motions to Dismiss, Individual Defendants argue that, except with respect to Defendant Devon Knox, [5] Count I fails to allege that they engaged in specific conduct, possessed any knowledge, or agreed to participate in the malicious

[5] Defendants Ty Castellano, Patrick Shields, Kevin Warg, Neil Larson, and Devon Knox (together, "SEPTA Individual Defendants") concede that Plaintiff "arguably" has "alleged knowledge and participation" as to Defendant Devon Knox with respect to Count I. (See Doc. No. 11 at 9) Because the SEPTA Individual Defendants do not seek dismissal of Count I as to Defendant Devon Knox, that claim against him will survive.

prosecution and related conspiracy that Plaintiff alleges took place. After reviewing the facts alleged in the Complaint in the light most favorable to Plaintiff, the Court agrees with their argument.

As a general matter, a Section 1983 claim for malicious prosecution is brought under the Fourth Amendment. To state a claim for malicious prosecution under the Fourth Amendment, a plaintiff in a Section 1983 action must allege facts showing that:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the Plaintiff to justice; and (5) the Plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (en banc) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)), abrogated on other grounds by Thompson v. Clark, 596 U.S. 36 (2022). Nowhere in Count I does Plaintiff mention the Fourth Amendment, although it is evident that this is the Amendment he has in mind.

In any event, Plaintiff offers only conclusory allegations to support his claim for malicious prosecution under Section 1983 in Count I. Plaintiff complains that the Individual Defendants "investigated [him] . . . knowing the allegations to be without probable cause," then "confiscate[ed] and disappear[ed] his registered" gun, next "us[ed] fabricated and manufactured statements" to bring criminal charges, and did so "in violation of policies, in violation of practices[, and in violation of] customs of the City of Philadelphia. But, other than with regard to Defendant Devon Knox, the bus driver, Plaintiff's allegations do not provide sufficient factual detail to connect any Individual Defendant to the conduct he challenges. Plaintiff does not describe the roles of Individual Defendants in the investigation, provides no particular facts to demonstrate that probable cause was lacking, quotes none of the fabricated and manufactured

statements, and attributes no authorship to those statements. And although Plaintiff repeatedly alleges in the Complaint that Individual Defendants acted in violation of protocol, he does not identify the policies at issue, describe what those policies required, or explain how any Individual Defendants' conduct violated them. With such broad generalities forming the basis of his malicious prosecution claim under Section 1983, Plaintiff has failed to plausibly allege a cause of action for which relief must be granted. Accordingly, Plaintiff's malicious prosecution claim brought under Section 1983 in Count I will be dismissed as to Individual Defendants except for Defendant Devon Knox.

Plaintiff's claim for malicious prosecution under Section 1985 fares no better. Plaintiff generally labels the Individual Defendants' conduct a "conspiracy" but never explains what they did or agreed to do. As such, the Section 1985 claim fails. Plaintiff's malicious prosecution claim brought under Section 1985 in Count I will be dismissed as to all Individual Defendants.

**b. Count II: "Liberty Deprivations" under Section 1983 and Section 1985**

Count II of Plaintiff's Complaint asserts "Liberty Deprivations" under Section 1983 and Section 1985 against the Individual Defendants. Each set of Defendants addresses Count II differently. Attorney Does 1-3; James Gregore, Esquire and Cordell Spires, Esquire (together, "District Attorney's Office Individual Defendants") "generously" read the Complaint to assert only claims for malicious prosecution and conversion. (Doc. No. 28 at 5). Lawrence Nuble, Christopher Evanson, Donato, and Weiss, all Philadelphia police officers (together, "City of Philadelphia Individual Defendants"), emphasize that Count II "includes inflammatory accusations that fail to state any cause of action" and recast Count II as a "restatement" of Plaintiff's malicious prosecution claim. (See Doc. No. 10 at 14). The SEPTA Individual Defendants attack Count II as time-barred and likewise note the absence of allegations that they

"had any involvement whatsoever with the decisions to bring charges against Plaintiff or to retain his firearm." (Doc. No. 11 at 2-3) The Court finds Individual Defendants' arguments persuasive.

In Count II, Plaintiff asserts that the defendants framed him for a crime he did not commit when they authorized criminal charges, seized both his person and his firearm, and deprived him of "his liberty and freedom rights" while subjecting him to court orders and bail restrictions "during the life of this malicious prosecution." (Doc. No. 1 at 16, 17) In addition, the Complaint includes passing references to "intrusive governmental acts that shocks the conscience," which sound more like a Fourteenth Amendment due process claim. (Doc. No. 1 at 17) But the Supreme Court prohibits lower courts from putting claims arising from the arrest and booking process, followed by the obligation to attend court proceedings while out on bail, under the Fourteenth Amendment when the allegations fit within another cause of action. See, e.g., Albright v. Oliver, 510 U.S. 266, 274 (1994) (observing that "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it").

Given Plaintiff's title for Count II—"Liberty Deprivations"—it appears that what he is alleging in that Count includes part of the malicious prosecution claim asserted in Count I, the last element of which concerns "a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." However, case law does not indicate that Fourth Amendment seizures of the sort described in the Complaint are separately actionable apart from malicious prosecution claims. Nor does Plaintiff cite any authority recognizing that Fourth Amendment seizures are independently actionable as "liberty deprivations" under Section 1983 or Section 1985. Accordingly, this Court cannot discern how Count II states a cognizable claim

independent of Count I under either statute. For this reason, both claims under Section 1983 and Section 1985 in Count II will dismissed as to all Individual Defendants.

**c. Count III: "Due Process Violations" Arising from the "Conversion/Disappearance of Firearm" under Section 1983 and Section 1985**

Count III of Plaintiff's Complaint asserts "Due Process Violations" for the "Conversion/Disappearance of Firearm" under Section 1983 and Section 1985. The City of Philadelphia Defendants and SEPTA Defendants argue that Count III should be dismissed not only as time-barred, but also because Plaintiff again fails to allege their personal involvement in the challenged conduct. (Doc. Nos. 10, 11) The District Attorney's Office Individual Defendants construe Count III as a conversion claim. (Doc. Nos. 28 at 5)

Through his Section 1983 claim in Count III, Plaintiff continues to reference his "liberty and privileges" under the Fourth and Fourteenth Amendments, and he also raises the Fifth Amendment for the first time. (Doc. No. 1 at 19) In Frein v. Pa. State Police, 47 F.4th 247, 250 (3d Cir. 2022), the Third Circuit recognized a Fifth Amendment "takings" claim when police officers confiscate firearms in connection with a criminal investigation and fail to return the weapons after trial. There, the Third Circuit recognized that "the government is permitted to seize evidence for use in investigation and trial, but that such property must be returned once criminal proceedings have concluded, unless it is contraband or subject to forfeiture." Id. (quoting United States v. Chambers, 192 F.3d 374, 376 (3d Cir. 1999)). That is, if the government wants to keep the property, it must either secure a conviction and utilize the criminal forfeiture process, or it must initiate a civil forfeiture process. Id. at 253.

Plaintiff's conversion or "due process violations" claim under Section 1983 may be viable against Defendant Christopher Evanson, the police officer who Plaintiff alleges took custody of his firearm. Otherwise, Plaintiff fails to allege any facts connecting other Individual

Defendants to the conversion or "due process violations" of which he complains, and for this reason, the Section 1983 claims in Count III must be dismissed, except for Defendant Christopher Evanson.

But Plaintiff's conversion or "due process violations" claim under Section 1985 fails altogether. Again, Plaintiff offers no meaningful explanation of the alleged conspiracy in the Complaint. He does not identify any agreement, common objective, or coordinated conduct among the Individual Defendants he names. Plaintiff's Section 1985 claim in Count III will be dismissed as to all Individual Defendants.[6]

**d. Count IV: "Brady/Giglio" Violations under Section 1983 and Section 1985**

Count IV of Plaintiff's Complaint asserts "Brady/Giglio" Violations under Section 1983 and Section 1985 against all Individual Defendants.

Plaintiff contends that the various defendants used fabricated and manufactured statements "while suppressing exculpatory evidence and making false representations to Municipal Court Judges, Plaintiff and his Counsel to secure a false conviction." (Doc. No. 1 at

---

[6] Despite the pleading deficiencies, the statute of limitations defense must be addressed. From the allegations in the Complaint, Count III is timely at this stage and does not violate the statute of limitations. The personal injury tort law of the state in which the cause of action arose governs the length of the statute of limitations for Section 1983 and Section 1985 claims. Wallace v. Kato, 549 U.S. 384, 387 (2007); Bougher v. Univ. of Pittsburgh, 882 F.2d 74, (3d Cir. 1989). In Pennsylvania, that period is two years. 42 Pa. Cons. Stat. § 5524(2). However, federal law governs the claim's accrual date and provides that the statute of limitations starts running "when the plaintiff knew or should have known of the injury upon which its action is based." Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (citing Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991) and Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998). Further, under Frein, the government's obligation to return property seized as potential evidence arises upon the conclusion of criminal proceedings. Frein, 47 F.4th at 253.

Here, Plaintiff's claim accrued on January 4, 2024, the day his criminal charges were dropped. Plaintiff filed the present complaint on October 12, 2025, well within the two-year limitations period for his conversion or "due process violations" claim.

17). Plaintiff further alleges that the Individual Defendants suppressed "the whereabouts of Plaintiff's Glock 19CGen4 from his book bag and [its] disappearance" such that, "[a]t all times during this malicious prosecution, Plaintiff was deprived of the right to be confronted with credible evidence and disclosure of exculpatory evidence in accordance with the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution." (Id. at 22).

Courts have recognized Section 1983 claims based on Brady where the plaintiff alleges that: (1) there was evidence favorable to him because it was either exculpatory or impeaching; (2) the prosecution withheld it; and (3) the plaintiff (as a criminal defendant) was prejudiced because the evidence was material. See, e.g., Wagner v. City of Phila., No. 25-CV-1450, 2026 WL 789450, at *11 (E.D. Pa. Mar. 20, 2026); Poventud v. City of N. Y., 750 F.3d 121, 132-36 (2d Cir. 2014). Importantly, Brady does not provide a freestanding constitutional right to discovery; it protects a criminal defendant's right to a fair trial by requiring the government to disclose materially exculpatory evidence.

Plaintiff's allegation of a false conviction cannot be reconciled with the undisputed fact that he was never convicted. As noted earlier, Plaintiff's criminal charges were dropped before trial. He therefore could not have suffered prejudice from suppression of evidence, having never reached the stage at which such evidence could be used against him. And without adequately alleging an agreement among two or more persons to commit a Brady violation at trial, he cannot establish that the Individual Defendants formed a conspiracy. For these reasons, Plaintiff's Section 1983 and Section 1985 claims in Count IV will be dismissed as to all Defendants.

**e. Count V: "Constitutional Claim – Second Amendment" under Section 1983 and Section 1985**

Count V of Plaintiff's Complaint asserts a "Constitutional Claim – Second Amendment" under Section 1983 and Section 1985 against all Individual Defendants. The SEPTA Individual

Defendants argue that Count V is time-barred, while the City of Philadelphia Individual Defendants take the position that Section 1983 cannot authorize a private right of action for Second Amendment claims. (Doc. No. 10 at 16) But they offer no authority for this position.

By contrast, the Third Circuit has allowed Section 1983 claims premised on Second Amendment violations to proceed past the motion to dismiss stage. See Frein, 47 F.4th at 247 (reversing the district court's dismissal of Section 1983 action based on the Second Amendment). For instance, in Frein, the Third Circuit held that the Second Amendment forbid government officials from retaining seized firearms, even though the weapons had been confiscated pursuant to a valid search warrant. Because the guns were never implicated in criminal activity, the government could not indefinitely hold onto them. The government thus "infringed" on the plaintiffs' right to "keep" their firearms by retaining possession of the firearms. Id. at 254. Elaborating further, the Third Circuit explained that a valid search warrant for the seizure of firearms "immunized the government for the duration of the criminal case," but once criminal proceedings conclude, the government must either "get another warrant or return the property." Id.

As to his Section 1983 claim in Count V, Plaintiff describes the search of his book bag and seizure of his firearm as a "deprivation of the right to keep and bear arms under the Second Amendment[.]" (Doc. No. 1 at 24) Of all Individual Defendants against whom he brings this claim, Plaintiff only alleges that Philadelphia Police Department Officer Christopher Evans actually took possession of the firearm. As such, the Complaint cannot support a claim against any of the other Individual Defendants. No conduct regarding the firearm is attributed to them as individuals.

As to his Section 1985 claim in Count V, the Complaint suffers from another fundamental deficiency. Plaintiff identifies no agreement or concerted action among the Individual Defendants, and he fails to allege a cognizable conspiracy under Section 1985.

Even so, similar to Count III, Count V is timely. As noted, the statute of limitations for a Section 1983 and Section 1985 action is two years, as the length is governed by the limitations period applicable to personal injury actions in Pennsylvania. Further, under federal law, a cause of action accrued when Plaintiff "knew or should have known of the injury" at issue. Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009). Plaintiff was entitled to regain possession of his firearm once his criminal charges were dismissed, meaning that his cause of action accrued on January 4, 2024. Plaintiff filed the present complaint on October 12, 2025, well within the two-year statute of limitations for his "constitutional claim – Second Amendment." Except as to Defendant Christopher Evanson, Plaintiff's Section 1983 claim in Count V will be dismissed. Plaintiff's Section 1985 claim in Count V will be dismissed as to all Individual Defendants.

**f. Count VI: "Constitutional Claim – Fourth Amendment" under Section 1983 and Section 1985**

Count VI of Plaintiff's Complaint asserts "Constitutional Claim – Fourth Amendment" under Section 1983 and Section 1985 against Individual Defendants. The City of Philadelphia Individual Defendants read Count VI as a Fourth Amendment seizure claim and note that Plaintiff offers no probable cause analysis for this claim. (Doc. No. 10 at 10) The City of Philadelphia Individual Defendants also assert the seizure of Plaintiff's firearm was the product of a constitutional search incident to arrest, which would absolve Defendant Christopher Evanson too of liability. (Doc. No. 10 at 10) Despite the position of the City of Philadelphia Individual Defendants, it appears that the claim in Count VI only involves the seizure of Plaintiff's person. Finally, they assert that the "privacy claim" is entirely undeveloped and must

fail for that reason alone. Separately, the SEPTA Individual Defendants maintain that Pennsylvania's statute of limitations bars Count VI. The Court agrees with these arguments.

To support his Section 1983 and 1985 claims in Count VI, Plaintiff complains that the Individual Defendants unlawfully arrested him, conducted a warrantless search and seizure, and converted his firearm. (Doc. No. 1 at 25) He further alleges that the Individual Defendants "deprived [him] of his right to privacy under the Fourth Amendment[.]" (Doc. No. 1 at 26) However, the only individual who appears to be listed as a proper defendant for this conversion claim is police officer Christopher Evanson, as the Complaint specifically alleges that bodycam footage show him placing the firearm in the side panel of a patrol vehicle.

But irrespective of pleading deficiencies, the applicable statute of limitations bars the Section 1983 and 1985 claims in Count VI as untimely filed. As noted, the statute of limitations for Section 1983 and Section 1985 actions is two years, as the length is governed by the limitations period applicable to personal injury actions in Pennsylvania. Further, under federal law, a cause of action accrues when Plaintiff "knew or should have known of the injury" at issue. Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009). Here, Plaintiff should have known of the alleged injury on August 13, 2023, the day he was subject to the search, seizure, and arrest he now challenges. Therefore, his claim under Section 1983 based on that search and seizure accrued on August 13, 2023. But Plaintiff did not file the Complaint until two years later, on October 12, 2025, approximately two months after the limitations period ran. Because Plaintiff's "constitutional claim – Fourth Amendment" under Section 1983 and 1985 is untimely, Count VI will be dismissed as to Individual Defendants for this reason too.

**g. Count VII: Monell Claim under Section 1983**

Count VII of Plaintiff's Complaint asserts a Monell Claim against the City of Philadelphia. In response, the City of Philadelphia submits that Plaintiff's claim fails to plead with particularity a policy, practice, or custom that caused the alleged harm. The Court agrees.

In Monell v. Department of Social Services, the United States Supreme Court held that municipal entities can be subject to Section 1983 liability in limited circumstances. 436 U.S. 658, 690 (1978). Under Monell, to state a Section 1983 claim against a municipality, a plaintiff must establish that (1) a constitutionally protected right has been violated, and (2) the alleged violation resulted from a municipal policy, custom, or deliberate indifference. See id. at 694-95.

The gravamen of Monell and its progeny is that "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). In other words, the constitutional deprivation must have its origin in a policy, custom, or deliberate indifference of a municipality. See Monell, 436 U.S. at 694. Liability based on the actions of municipal officials only exists where it can be shown that the officials acted in accordance with that policy, custom, or deliberate indifference. See id. Accordingly, municipalities cannot be held liable under Section 1983 for the acts of its employees based on the doctrine of respondeat superior or for other forms of vicarious liability. Id. at 692 (noting that the language of Section 1983 "cannot easily be read to impose liability vicariously on government bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"); see also Reitz v. Cnty. of Bucks, 125 F.3d 139, 146 (3d Cir. 1997) ("[M]unicipal liability simply cannot be predicated upon a showing of respondeat superior....").

Here, Plaintiff alleges that the City "adopted and maintained a policy, practice, and/or custom of condoning and/or acquiescing in the violation of constitutional rights" by police officers, which involves "engaging in unlawful arrests, searches and seizures and malicious prosecution of citizens without evidence or probable cause." (Doc. No. 1 at 27) Plaintiff further alleges that the City failed to "adequately train, supervise, and discipline" police officers such that they "conduct proper investigations, including properly documenting their investigation by reporting on confiscated property." (Doc No. 1 at 27) Moreover, Plaintiff believes that the City "has been aware of" its "unconstitutional policy, practice, and/or custom of 'rushing to judgment' and arresting, searching, and seizing property and maliciously prosecuting persons without probable cause based on fabricated or manufactured evidence in the past and for a substantial period of time." (Doc No. 1 at 28) With this knowledge, Plaintiff avers, the City has been "deliberately indifferent" to its unconstitutional practices. (Doc. No. 1 at 28)

Despite the sweeping nature of his allegations, Plaintiff identifies no prior incidents supporting his theory that Philadelphia police officers routinely commit constitutional violations, which the City condones through official policy or custom. Plaintiff similarly fails to identify the specific policy with which he takes issue or even a policy maker. Does Plaintiff mean to allege that the City maintains a policy of confiscating firearms like his own? In this regard, the Complaint needs to allege precise facts. Moreover, no specific factual allegations support the notion that the City condoned constitutional violations through deliberate indifference by not properly training their police officers. With such ambiguity and lack of factual support, Plaintiff cannot satisfy the pleading requirements for a Monell claim against the City. Thus, Count VII will be dismissed.

**h. Count VIII: Monell Claim under Section 1983**

Count VIII of Plaintiff's Complaint asserts a Monell Claim against SEPTA. SEPTA, responding to this claim, argues that Plaintiff's allegations merely amount to legal conclusions and speculation. The Court shares SEPTA's view.

Indeed, Plaintiff's allegations supporting Count VIII are woefully similar to those supporting Count VII, and they fail for the same reasons. Plaintiff relies only on the present incident to support his Monell claim, identifies no SEPTA policies that harmed him, and names no SEPTA employee with authority to establish policy on the agency's behalf. Custom and deliberate indifference are also insufficiently pled. Consequently, Count VIII will be dismissed.

**i. Count IX: Intentional Infliction of Emotional Distress under Pennsylvania Law**

Count IX of Plaintiff's Complaint asserts a Pennsylvania state law claim for intentional infliction of emotional distress. Defendants maintain that the state's statute of limitations bars this tort claim. The Court agrees with this argument too.

In Pennsylvania, the tort of intentional infliction of emotional distress carries a two-year statute of limitations. See 42 Pa.C.S.A. § 5524. To support his claim, Plaintiff alleges that the Individual Defendants "unlawfully arrested Plaintiff, conducted a warrantless search and seizure of his licensed and registered firearm from his book bag and converted the firearm without preparing or producing a [p]roperty [r]eceipt." (Doc. No. 1 at 31) Moreover, Plaintiff alleges that the Individual Defendants "engaged in extreme and outrageous conduct by falsely accusing Plaintiff of using his registered firearm to make terroristic threats . . . and falsely identifying Plaintiff as the passenger responsible for damaging SEPTA's [b]us." (Doc. No. 1 at 32). By Plaintiff's own account, all of these events occurred on August 13, 2023, the day his claim for

intentional infliction of emotional distress accrued. Over two years later, on October 12, 2025, Plaintiff filed his Complaint, which is approximately two months after the limitations period ran. Because the statute of limitations bars Plaintiff's claim for intentional infliction of emotional distress, Count IX will be dismissed as to Individual Defendants.

## V. CONCLUSION

Counts I – IX, with the exception of the Section 1983 claim in Count I as to Defendant Devon Knox and with the exception of the Section 1983 claims in Counts III and V as to Defendant Christopher Evanson, will be dismissed. In addition, Plaintiff will be granted leave to amend his Complaint because the Court cannot find upon review of the Complaint that amendments to Counts I – V and VII – IX would be futile. The claims in Count VI, which are barred by the statute of limitations, cannot be amended and are dismissed as claims in this case. An appropriate order follows.